UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHIPBUILDERS OF WISCONSIN, INC. d/b/a BURGER BOAT COMPANY, | § § § |
| Plaintiff, | § § |
| v. | § Civil Case No. _____ § |
| SEA OWL II, LTD., | § § § |
| Defendant. | § § § |

## PETITION FOR JUDICIAL APPOINTMENT OF AN ARBITRATOR TO FILL THE VACANCY ON THE PANEL AND TO STAY ARBITRATION PROCEEDINGS

**COMES NOW** Petitioner Shipbuilders of Wisconsin, Inc., d/b/a Burger Boat Company ("Burger Boat"), and pursuant to 9 U.S.C. § 5, hereby petitions this Court for an order appointing an arbitrator to a vacancy on the panel in the arbitration with Respondent Sea Owl II, Ltd. ("Sea Owl"), as follows:

### I.

### PRELIMINARY STATEMENT

The underlying dispute between Burger Boat and Sea Owl arises from alleged delays in the construction and delivery of the "Sea Owl," a state of the art, 140-foot yacht custom built by Burger Boat for Sea Owl. Sea Owl's party-appointed arbitrator recently withdrew from the panel that was constituted to hear the dispute. Neither the underlying contract nor the applicable rules of procedure, specify a method to fill a vacancy when an arbitrator withdraws from the panel during the pendency of the proceeding. Accordingly, pursuant to Section 5 of the Federal Arbitration Act (the "FAA"), Burger Boat respectfully requests that this Court appoint an arbitrator to replace Sea Owl's party-appointed arbitrator.

Page 1

## II.

## PARTIES

1. Burger Boat is a corporation duly organized and existing under the laws of the State of Wisconsin, authorized to do business in the State of Wisconsin, with its principal place of business at 1811 Spring Street, Manitowoc, WI, 54220.

2. Sea Owl is a company organized under the laws of the Cayman Islands with its principal place of business in Grand Cayman, Cayman Islands. Sea Owl may be served with this Petition through its counsel, Georgia Winston, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, 47th Floor, New York, NY 10166-0193.

## III.

## JURISDICTION

3. The Court has jurisdiction over the subject matter of this action pursuant to: (i) 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States, to wit, the Federal Arbitration Act; and (ii) 28 U.S.C. 1332(a)(1) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because: (i) a substantial part of the events or omissions giving rise to the request occurred in this judicial district; and (ii) Sea Owl is subject to the Court's personal jurisdiction with respect to this action.

## IV.

## FACTUAL BACKGROUND

A.  **Sea Owl Engages Burger Boat To Build Sea Owl II.**

5. Founded in 1863, Burger Boat is a builder of custom-designed, hand-built pleasure yachts and other commercial vessels and has a long tradition of construction that meets the highest customer expectations. On May 13, 2005, Sea Owl and Burger Boat entered into the Yacht Construction Agreement ("YCA"), pursuant to which Burger Boat agreed to build a state-of-the-art, tri-deck, 140-foot yacht, which is known today as the "*Sea Owl II*.".

6. By May 2007, it was apparent to the parties that the number and types of changes that had been ordered by Sea Owl would require significant additional time to complete construction of the vessel and millions of additional dollars of additional cost. As a result, Burger Boat and Sea Owl negotiated an amendment to the YCA (the "Amended YCA"), which was executed on March 24, 2008. The Amended YCA changed the delivery date for the Vessel to September 28, 2009 (the "Revised Delivery Date").

7. After the Amended YCA was signed, however, Sea Owl missed a series of agreed-upon deadlines to furnish Burger Boat with plans, specifications, equipment and labor that were to be supplied by Sea Owl itself, or vendors controlled exclusively by Sea Owl. In each instance, Burger Boat timely notified Sea Owl that its failure to adhere to the deadlines at issue had resulted in contractually permissible delays to the Revised Delivery Date ("Permissible Delays"). As a result of these Permissible Delays, Burger Boat did not deliver the *Sea Owl II* until September 27, 2010.
Page 3

**B. The Parties Commence Arbitration Pursuant To The Amended YCA And A Panel Is Constituted To Hear The Dispute.**

8. Claiming, among other things, damages related to Burger Boat's allegedly late delivery of the vessel, Sea Owl instituted an arbitration against Burger Boat on April 9, 2012, by filing a Demand for Arbitration ("Demand") with the American Arbitration Association (the "AAA") pursuant to Section 24 of the YCA, as amended.

9. Section 24 of the YCA provides as follows:

> All disputes, claims or controversies of any kind arising out of or relating to this Agreement or the breach or violation of any term of this Agreement shall be conclusively determined and settled by expedited binding arbitration under the auspices of the American Arbitration Association in accordance with its Commercial Arbitration and Mediation Procedures (including procedures for large, complex and commercial disputes) [("AAA Rules")] . . . [t]he parties shall, within five (5) business days after notice of arbitration is received, each appoint one arbitrator, who shall be a naval architect or marine surveyor. The third arbitrator, who may be an attorney, shall be appointed by the two so chosen.

10. Because the Sea Owl is a foreign corporation, the case was referred for management to the International Centre for Dispute Resolution (the "ICDR"), an arm of the AAA. On April 26, 2012, Burger Boat filed its Response to Sea Owl's Demand. On June 5, 2012, Burger Boat filed its Second Amended Response to Sea Owl's Demand and Original Counterclaim.

11. Subsequent to the filing of the arbitration pleadings, the ICDR appointed a panel of three arbitrators (the "Panel") consisting of the following individuals: (i) Henry Pliske ("Pliske") as Sea Owl's appointed arbitrator; (ii) Dudley Dawson as Burger Boat's appointed arbitrator; and (iii) Kenneth W. Fisher as the third arbitrator, who serves as the chairman.

**C. After A Member Of The Panel Resigns, The ICDR Improperly Seeks To Fill The Vacancy.**

12. On January 22, 2014, the ICDR informed the parties that Pliske had withdrawn from the panel due to health issues, and directed that Sea Owl select a substitute arbitrator. On February 10, 2014, Sea Owl nominated Drew B. Hains ("Hains") as the replacement for Pliske and informed the AAA of its selection.

13. Section 24 of the YCA, however, does not specify a method to fill a vacancy in the event an arbitrator withdraws from the panel while the proceedings are ongoing. Likewise, the AAA Rules do not provide for a mechanism to fill such a vacancy. Accordingly, by letter to the ICDR dated February 12, 2014, Burger Boat objected to the procedure by which Hains was nominated, advising the ICDR that Section 5 of the FAA now governed the appointment of the replacement arbitrator. Burger Boat also advised the ICDR that any Panel that contained an arbitrator not appointed by this Court pursuant to Section 5 would be improperly constituted, and thus have no jurisdiction over the claims brought in the Demand. Burger also objected to Hains' qualifications as arbitrator based on conflicts of interest that raised a justifiable doubt about Hains' ability to be impartial and independent.

14. The ICDR nevertheless proceeded, by letter dated February 13, 2014, to tentatively select Hains as the replacement arbitrator. In doing, the ICDR provided the disclosures of potential conflicts from Hains that are required by the AAA Rules (the "Disclosures"). The final appointment of Hains, however, was stated by the ICDR to be subject to determination of his qualifications after considering Burger Boat's objections and any response to those objections from Sea Owl.

15. By letter dated February 18, 2014, Burger Boat filed a supplemental objection to Hains' nomination, selection and qualifications as replacement arbitrator, citing to additional

information contained in the Disclosures. Burger Boat also reiterated its objection to the procedure by which the ICDR solicited the nomination of Hains and selected him as a potential replacement, and again advised the ICDR that: (i) the replacement arbitrator must instead be appointed by this Court pursuant to Section 5 of the FAA; (ii) any Panel containing an a replacement arbitrator appointment by any other method would not have jurisdiction over Sea Owl's demands.

16. To date, the ICDR has not yet responded to Burger Boat's objections.

## V.

## PETITION FOR JUDICIAL APPOINTMENT OF AN ARBITRATOR TO FILL THE VACANCY ON THE PANEL

17. Burger Boat repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

18. The Federal Arbitration Act, 9 U.S.C. § 5 ("Section 5"), provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Under Section 5, the contractually provided for method of filling the vacancy is to be followed, but if there is no negotiated-for method, then a U.S. District Court is empowered to fill the vacancy.

19. The Amended YCA does not provide for a method for filling a vacancy in the Panel after the arbitration proceedings have begun.

20. As such, pursuant to Section 5 of the FAA, this Court is required to designate and appoint an arbitrator to replace the vacancy on the Panel created by Pliske's withdrawal therefrom.

21. The ICDR, however, has refused to follow this procedure in selecting a replacement for Pliske.

22. Accordingly, Burger Boat requests that the Court designate and appoint an arbitrator to fill the vacancy on the Panel. If the Court does not provide Burger Boat its requested relief, Burger Boat will be irreparably harmed because it will have to go forward with an arbitration that does not comply with the negotiated-for arbitration provision in Section 24 of the YCA, as amended, and will have to try the case before a panel that has no jurisdiction to hear the underlying matter.

## VI.

## REQUEST FOR RELIEF

**WHEREFORE**, Petitioner Shipbuilders of Wisconsin, Inc., d/b/a Burger Boat Company respectfully prays for an Order from the Court:

1. Appointing an arbitrator to fill the vacancy caused by the resignation of Henry Pliske so that the arbitration of the underlying matter may go forward and the parties may resolve their dispute; and

2. Granting Petitioner all other relief to which it may be entitled at law and equity.

Respectfully submitted,

Steven J. Berryman
State Bar No. 1026267
Steven.Berryman@quarles.com
Eric J. Van Schyndle
State Bar No. 1076063
Eric.VanSchyndle@quarles.com


 s/Eric J. Van Schyndle
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2350
Milwaukee, WI  53202-4426
414-277-5797
Attorneys for Petitioners




William A. Brewer III
Texas Bar No. 2967035
Kenneth N. Hickox, Jr.
Texas Bar No. 2405194

**BICKEL & BREWER**
1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PETITIONER**